UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **Claire Rosenson,**<br>5826 Tudor Lane<br>Rockville, MD 20852<br><br>   Plaintiff,<br><br>   v.<br><br>**Sara J. Bloomfield,** Director,<br>U.S. Holocaust Memorial Museum<br>100 Raoul Wallenberg Place, SW<br>Washington DC 20024<br><br>   Defendant. | Case No.: 24-1365<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Claire Rosenson, by and through undersigned counsel, files this Complaint against Sara J. Bloomfield, in her capacity as Director of the U.S. Holocaust Memorial Museum ("Museum" or "Defendant") for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq., for retaliation and hostile work environment.

## NATURE OF ACTION

1. This is an action to recover damages for Defendant's unlawful retaliation for protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*. ("Title VII").

2. The Plaintiff, Dr. Rosenson, worked for Defendant for 17 years.

3. During that time, Dr. Rosenson was subjected to discrimination and retaliation that escalated every time she raised her concerns to Human Resources and eventually through Defendant's formal Equal Employment Opportunity (EEO) procedure.

4. Dr. Rosenson began filing HR complaints in 2017, raising concerns about discrimination and harassment based on sex and the disparate treatment between men and women at the Museum.

5. The discrimination and harassment increased.

6. On November 7, 2019, Dr. Rosenson was not selected for the position of Director of Academic Publications in the Mandel Center for Advanced Holocaust Studies.

7. Rather than select Dr. Rosenson, Defendant cancelled the vacancy announcement then re-opened the search.

8. On March 14, 2020, Dr. Rosenson filed a formal EEO complaint based on her sex and retaliation for her prior protected activity.

9. Again, the discrimination and harassment increased.

10. On July 13, 2020, Dr. Rosenson amended her formal EEO complaint to include a second non-selection based on retaliation for the same re-opened position.

11. Instead, in July 2020, Defendant hired Ms. Laura Foster into the Director position.

12. Ms. Foster became Dr. Rosenson's first-line supervisor.

13. Again, the discrimination and harassment increased. This time, it resulted in Dr. Rosenson's termination.

14. As a result of the retaliatory treatment, Plaintiff brings this Complaint to seek damages under Title VII.

## JURISDICTION AND VENUE

15. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States.

16. Pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), venue is proper in this judicial district as the relevant employment records are maintained in Washington, D.C. by Defendant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

17. Dr. Rosenson exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.9.

18. Dr. Rosenson made initial contact in this case with an Equal Employment Opportunity ("EEO") counselor on March 15, 2022.

19. Dr. Rosenson filed a formal EEO complaint with Defendant's EEO office on December 12, 2022.

20. Dr. Rosenson requested a hearing before an Equal Employment Opportunity Commission ("EEOC") Administrative Judge following the Defendant's completion of its investigation of Plaintiff's formal EEO complaint.

21. On December 13, 2023, Dr. Rosenson withdrew her request for a hearing and requested a Final Agency Decision.

22. On February 11, 2024, Dr. Rosenson received a Final Decision from Defendant.

23. Dr. Rosenson is filing this complaint less than 90 days after receiving the final agency decision, in accordance with 29 C.F.R. § 1614.407(a).

## PARTIES

24. During the relevant period, Dr. Rosenson was a resident of Rockville, Maryland and was employed by Defendant in Washington, D.C.

25. During the relevant period, Dr. Rosenson was Defendant's employee within the meaning of Title VII and was entitled to protections under same.

26. Defendant, Sara J. Bloomfield, is the Director of the U.S. Holocaust Memorial Museum, and is named in her official capacity. For the purposes of this lawsuit, the U.S. Holocaust Memorial Museum is a federal agency located in Washington, D.C. 36 U.S.C.A. § 2301(2) ("The Museum shall… operate and maintain a permanent living memorial museum to the victims of

the Holocaust, in cooperation with the Secretary of the Interior and other Federal agencies as provided in section 2304 of this title").

## STATEMENT OF FACTS

### *Background*

27. In 2005, Dr. Rosenson began working for Defendant as an Assistant Editor on the Museum's publication *Holocaust and Genocide Studies*.

28. In 2009, the Museum promoted Dr. Rosenson to Associate Editor in 2009.

29. In October 2017, the Museum laterally moved Dr. Rosenson to the position of Special Projects Editor.

30. Dr. Rosenson held that position until Defendant terminated Dr. Rosenson's employment on October 7, 2022.

31. Beginning in July 2020, Laura Foster, Director of Academic Publications, was Dr. Rosenson's first-line supervisor. Ms. Foster's first-line supervisor was Dr. Robert Ehrenreich, and her second-line supervisor was Dr. Lisa Leff.

32. Dr. Rosenson had applied for the position that Ms. Foster was ultimately hired into.

33. In February 2020, an outside headhunting firm Jack Farrell and Associates (JF&A) found Dr. Rosenson fully qualified for the Director position.

34. An Agency-wide hiring freeze was in place at the time stating that external hiring was available only under certain conditions, including when there was no qualified internal candidate.

35. Dr. Rosenson was the only female applicant forwarded to management as a qualified candidate.

36. Dr. Leff instructed JF&A to reopen the search and "beat the bushes for more women."

37. Sarah Ogilvie, Chief Program Officer, granted Dr. Leff permission to hire from outside the Museum despite the presence of a qualified internal candidate in contravention of the hiring policy during the hiring freeze.

38. Ms. Ogilvie, Dr. Rosenson's fourth-line supervisor, involved herself in Dr. Rosenson's formal and informal performance evaluations after Dr. Rosenson began to complain about discrimination and harassment in 2017.

39. Upon information and belief, management knowingly hired a less qualified candidate to supervise Dr. Rosenson in order to avoid promoting Dr. Rosenson.

### *First EEOC Complaint*

40. Beginning in 2017, Dr. Rosenson informally complained to her supervisors and Human Resources about discrimination and harassment based on sex and the disparate treatment between men and women at the Museum.

41. On March 14, 2020, Dr. Rosenson filed her first formal EEO complaint related to her non-selection based on her sex and retaliation for her prior protected activity; and on July 13, 2020, Dr. Rosenson amended her formal EEO complaint to include a second non-selection based on retaliation.

### *Ms. Foster puts Dr. Rosenson on a 90-day performance plan.*

42. On December 3, 2021, discovery requests were served in Dr. Rosenson's first EEOC case.

43. On January 19, 2022, Dr. Rosenson misdirected an email intended for Ms. Foster.

44. Instead of hitting "forward," Dr. Rosenson hit "reply" and sent the message to the original sender of an email.

45. The misdirected email contained a concern related to the original sender that Dr. Rosenson and Ms. Foster had discussed on many occasions, had agreed upon the substance of the concern, and had informed upper management about previously.

46. Dr. Rosenson took responsibility for this error and attempted to correct it.

47. On January 28, 2022, discovery responses were served in Dr. Rosenson's first EEOC case.

48. On February 4, 2022, Ms. Foster introduced an initial 90 days of "performance feedback", which was effectively a performance plan, for Dr. Rosenson's "communications."

49. This was in response to Dr. Rosenson's January 19, 2022, email.

50. Ms. Foster eliminated Dr. Rosenson's responsibility to communicate directly with external partners and re-wrote Dr. Rosenson's emails using her subjectively preferred tone.

51. Ms. Foster made Dr. Rosenson wait for approval to respond to her primary contacts' emails, sometimes up to two months.

52. One of Dr. Rosenson's primary job duties prior to this date was communicating with external partners.

53. If an employee who had not engaged in protected activity sent this email, they would not have received a performance plan. At most, the employee would have been verbally reprimanded for this minor, fixable error, and likely simply instructed to not repeat the mistake.

54. Because Ms. Foster ordered Dr. Rosenson to immediately cease all communications with authors, publishers, or Publishing Subcommittee members without Ms. Foster's prior approval, Dr. Rosenson had limited opportunity to improve her communications performance during this time.

55. During this 90-day period, Ms. Foster, for the first time, informed Dr. Rosenson that she believed her discussion during a Publishing Subcommittee meeting some month earlier had been inappropriate.

56. When preparing for the meeting, Ms. Foster and Dr. Rosenson had agreed that it would be a difficult conversation and that the members would resist some of their advice.

57. Ms. Foster asked Dr. Rosenson to lead the meeting because Dr. Rosenson "had the expertise" necessary to do so.

58. Ms. Foster did not step in to take over the conversation at any time during the meeting.

59. Ms. Foster did not inform Dr. Rosenson during or immediately after the meeting that Dr. Rosenson's discussion was inappropriate.

60. Prior to this 90-day period, Dr. Rosenson had consistently received the highest possible score for "communication" in Dr. Rosenson's annual evaluations.

61. The only alleged deficiencies throughout her 17-year-long career with the Museum were identified after Dr. Rosenson began to complain about discriminatory and retaliatory behavior.

62. Alleged deficiencies sometimes referred to the complaints filed by Dr. Rosenson.

63. Alleged deficiencies were generally trivial or misplaced, such as Dr. Rosenson using the phrase "oh dear" in a communication to an outside scholar whom she knew personally.

64. On March 15, 2022, Dr. Rosenson informed Ms. Foster that she believed these criticisms were retaliation for her prior protected activity and initiated informal EEO counselling on March 15, 2022.

65. Dr. Rosenson's counterparts who have not engaged in protected activity, Mel Hecker and Steven Feldman, are not held to the same standard of communication.

66. For example, Mr. Feldman is informal and jocular in his analogous professional communications.

*Ms. Foster initiates a second improvement plan.*

67. Ms. Foster did not provide Dr. Rosenson with an annual performance evaluation for Fiscal Year 2021 although this was required according to Museum policy.

68. On June 8, 2022, Ms. Foster was deposed in Dr. Rosenson's first EEOC complaint.

69. When asked under oath whether she believed Dr. Rosenson was difficult to work with, Ms. Foster said "no."

70. At 1:00 pm on August 4, 2022, Ms. Foster and Dr. Rosenson were scheduled to participate in the third-party mediation through Human Resources that Dr. Rosenson had requested in an effort to resolve supervisory disputes.

71. During a last-minute meeting at 10:00 am the morning of the mediation, Ms. Foster introduced a new, 60-day performance feedback period.

72. During the afternoon mediation, Ms. Foster again focused on Dr. Rosenson's alleged failure to meet her expectations and Dr. Rosenson's job requirements.

73. Ms. Foster's discussion still primarily concerned Dr. Rosenson's communications in light of her misdirected email of January 19, 2022.

74. In the new feedback period, Ms. Foster introduced a new criticism about Dr. Rosenson's "timeliness" on a particular project.

75. Ms. Foster had previously discussed with Dr. Rosenson a possible FMLA work reduction for that project due to Dr. Rosenson's sister's illness and eventual death.

76. Ms. Foster also informed Dr. Rosenson that she was "failing" the job duty of "project management," though this duty was not and never had been part of Dr. Rosenson's position description.

77. Ms. Foster had never mentioned this duty before or given performance metrics or expectations for this duty.

78. Dr. Rosenson requested written guidance and performance metrics multiple times during the "performance feedback" periods.

79. Instead of providing Dr. Rosenson with tangible feedback or goals to meet the requirements to succeed in her position, Ms. Foster told Dr. Rosenson that she should be able to glean the principles from her edits of Dr. Rosenson's emails.

80. During this period Dr. Rosenson learned that her reporting structure had been changed, but that she had not been formally notified of that change.

81. After her termination, Dr. Rosenson learned that one of the primary tasks listed in her position description had been removed without her knowledge.

82. Upon information and belief, Ms. Foster did not take this same action against other staff book editors who did not participate in EEO activity.

*Ms. Foster terminates Dr. Rosenson's employment.*

83. The performance improvement period ended on October 6, 2022.

84. Ms. Foster terminated Dr. Rosenson's employment on October 7, 2022.

85. But for Dr. Rosenson's EEO complaint and related litigation, Dr. Rosenson would not have been terminated.

*Upper Management directed and approved her termination.*

86. Upon information and belief, Robert Ehrenreich, Lisa Leff, Tara Quinette, and Sarah Ogilvie influenced Ms. Foster to terminate Dr. Rosenson in retaliation for her prior protected activity which involved them.

## COUNT 1

**(42 U.S.C. § 2000e et seq.–Discrimination on the Basis of Protected Activity)**

87. Dr. Rosenson repeats and realleges paragraphs 1–86, above, as if fully set forth herein.

88. Defendant discriminated against Dr. Rosenson on the basis of her protected activity when Defendant wrongfully terminated Plaintiff on October 7, 2022.

89. By and through its conduct, Defendant violated Title VII.

90. Defendant's actions were intentional, reckless, and malicious.

91. As a result, Dr. Rosenson has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 2

**(42 U.S.C. § 2000e et seq.–Hostile Work Environment on the Basis of Protected Activity)**

92. Dr. Rosenson repeats and realleges paragraphs 1–86, above, as if fully set forth herein.

93. Defendant subjected Dr. Rosenson to harassment and a hostile work environment because of her protected activity.

94. By and through its conduct, Defendant violated Title VII.

95. Defendant's actions were intentional, reckless, and malicious.

96. As a result, Dr. Rosenson has suffered damages including lost wages and benefits, pain and suffering, emotional distress, reputational harm, and mental anguish.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Rosenson respectfully requests that this Court enter a judgment in her favor against Defendant and award her damages including back pay, front pay, lost benefits, $300,000 in compensatory damages for pain and suffering, liquidated damages, consequential damages, punitive damages, pre- and post-judgment interest, costs, the increased tax burden on any award, reasonable attorneys' fees, any other relief allowed under the above-referenced statutes, and any other relief that the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all Counts contained in the Complaint.

Dated: May 10, 2024,   Respectfully submitted:

_____
Tamara L. Slater (D.C. Bar No. 1616337)
Alan Lescht and Associates, P.C.
1825 K St. NW, Suite 750
Washington, D.C. 20006
Telephone: (202) 539-9308
tamara.slater@leschtlaw.com