### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

CLAIRE ROSENSON,

    *Plaintiff,*

  v.

SARA J. BLOOMFIELD,

    *Defendant.*

Civil Action No. 24-1365 (SLS)

Judge Sparkle L. Sooknanan

### MEMORANDUM OPINION

Dr. Claire Rosenson was fired from the U.S. Holocaust Memorial Museum after seventeen years. She brought this lawsuit to recover damages under Title VII of the Civil Rights Act of 1964 for retaliation and a hostile work environment. She claims that the Museum impermissibly placed her on two performance feedback plans, criticized and closely monitored her work, diminished her job responsibilities, changed her reporting structure, and ultimately terminated her from her position. The Museum has moved to dismiss only the hostile work environment claim under Federal Rule of Civil Procedure 12(b)(6). It also argues that liquidated damages and punitive damages are unavailable under Title VII. For the reasons below, the Court grants the motion.

### BACKGROUND

#### A.  Factual Background

The Court draws the facts, accepted as true, from the Plaintiff's Complaint. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

Dr. Rosenson began her tenure at the U.S. Holocaust Memorial Museum in 2005 as an Assistant Editor for the *Holocaust and Genocidal Studies* publication. Am. Compl. ¶ 27, ECF No. 5. The Museum promoted her to Associate Editor in 2009 and laterally moved her to Special

Projects Editor in 2017. *Id.* ¶¶ 28–29. Dr. Rosenson held that position until her termination in 2022. *Id.* ¶ 30.

In 2017, Dr. Rosenson informally complained to the Museum about "discrimination and harassment based on sex and the disparate treatment between men and women at the Museum." *Id.* ¶ 40. She later applied for a promotion to Director of Academic Publications but was not selected. *Id.* ¶¶ 6, 31–32. On March 14, 2020, Dr. Rosenson filed an Equal Employment Opportunity (EEO) complaint against the Museum, alleging that she was not selected because of her sex and as retaliation for her prior informal complaints in 2017. *Id.* ¶¶ 8, 41. The Museum "cancelled the vacancy announcement" and "re-opened the search." *Id.* ¶ 7. In July 2020, the Museum hired Laura Foster as the new Director of Academic Publications. *See id.* ¶¶ 11, 31. According to Dr. Rosenson, Ms. Foster was a less qualified candidate than her, and the Museum hired her "to supervise Dr. Rosenson in order to avoid promoting Dr. Rosenson." *Id.* ¶ 39. That same month, Dr. Rosenson amended her EEO complaint to again challenge her non-selection as retaliatory. *Id.* ¶ 41. In the fall of 2020, Ms. Foster—now Dr. Rosenson's supervisor—became aware of Dr. Rosenson's EEO complaint. *See id.* ¶¶ 12, 42–44.

In January 2022, Dr. Rosenson "misdirected an email intended for Ms. Foster." *Id.* ¶ 46. Rather than forwarding the email to Ms. Foster, she replied to the original sender with "a concern related to the original sender that Dr. Rosenson and Ms. Foster had discussed on many occasions[.]" *Id.* ¶¶ 47–48. Dr. Rosenson "took responsibility for this error and attempted to correct it." *Id.* ¶ 49. A month later, Ms. Foster placed Dr. Rosenson on an initial ninety-day "performance feedback" plan for her "communications." *Id.* ¶ 51. Ms. Foster prevented Dr. Rosenson from communicating directly with external partners, required Dr. Rosenson to seek her approval before sending emails, and rewrote Dr. Rosenson's emails "using her subjectively preferred tone." *Id.*

¶¶ 53–54, 57. Ms. Foster also pointed out "deficiencies" in Dr. Rosenson's communications. *Id.* ¶ 66. For example, she told Dr. Rosenson that her conduct in a meeting had been "inappropriate." *Id.* ¶¶ 58–60. And she criticized Dr. Rosenson's use of the phrase "oh dear" in a communication with an external partner Dr. Rosenson knew personally. *Id.* ¶ 66. Other employees were not "held to the same standard of communication." *Id.* ¶¶ 69–70. Prior to this performance feedback plan, Dr. Rosenson had "consistently received the highest possible score for 'communication' in [her] annual evaluations." *Id.* ¶ 63. Around February 2022, "Dr. Rosenson informed Ms. Foster that she believed these criticisms were retaliation for her prior protected activity." *Id.* ¶ 67.

On August 4, 2022, Ms. Foster placed Dr. Rosenson on another sixty-day performance feedback plan. *Id.* ¶¶ 74–75. Ms. Foster expressed concerns about Dr. Rosenson's "communications in light of her misdirected email" in January 2022. *Id.* ¶ 77. She also raised concerns about Dr. Rosenson's "'timeliness' on a particular project"—which Dr. Rosenson attributes to her sister's illness and passing. *Id.* ¶¶ 78–79. And Ms. Foster "informed Dr. Rosenson that she was 'failing' the job duty of 'project management,' though this duty was not and never had been part of Dr. Rosenson's position description." *Id.* ¶ 80. Around the same time, Dr. Rosenson learned about changes to her reporting structure, although "she had not been formally notified of that change." *Id.* ¶ 84.

Dr. Rosenson's performance plan ended on October 6, 2022. *Id.* ¶ 87. Ms. Foster fired Dr. Rosenson the next day. *Id.* ¶¶ 87–88. "After her termination, Dr. Rosenson learned that one of the primary tasks listed in her position description had been removed without her knowledge." *Id.* ¶ 85. After her termination, Dr. Rosenson filed her second EEO complaint. *Id.* ¶ 19.

### B.    Procedural Background

Dr. Rosenson filed an Amended Complaint on August 8, 2024. *See* Am. Compl. Count 1 alleges that Dr. Rosenson was fired in retaliation for her prior protected activity, and Count 2 alleges that the Defendant subjected Dr. Rosenson to a hostile work environment because of her prior protected activity, all in violation of Title VII. *See id.* ¶¶ 91–100. Dr. Rosenson seeks backpay, lost benefits, compensatory damages, liquidated damages, consequential damages, and punitive damages, among other relief. *Id.*, Prayer for Relief. On August 22, 2024, the Defendant filed a Partial Motion to Dismiss. *See* Def.'s Partial Mot. Dismiss, ECF No. 7. The motion is fully briefed.

## LEGAL STANDARD

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotations omitted). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**DISCUSSION**

The Defendant urges dismissal of Dr. Rosenson's hostile work environment claim under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Def.'s Partial Mot. Dismiss at 7–12. The Defendant also argues that Dr. Rosenson cannot seek liquidated or punitive damages under Title VII. *See id.* at 12–14. The Court agrees and grants the Defendant's motion.

**A.    Hostile Work Environment**

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). This language makes it unlawful for an employer to "requir[e] people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). And a plaintiff may bring a hostile work environment claim based on retaliation. *See, e.g.*, *Singletary v. District of Columbia*, 351 F.3d 519, 526–27 (D.C. Cir. 2003); *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 79, 82–83 (D.D.C. 2013).

To prevail on a retaliatory hostile-work-environment claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris*, 510 U.S. at 21); *Bergbauer*, 934 F. Supp. 2d at 79 (finding that courts in this District "typically apply the same legal standard" to discriminatory and retaliatory hostile work environment claims); *see also Poland v. D.C. Water and Sewer Auth.*, No. 16-cv-2031, 2022 WL 2452609, at *8 (D.D.C. July 6, 2022) (applying the same standard). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes

5

with an employee's work performance." *Baloch*, 550 F.3d at 1201 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). "The Supreme Court has made it clear that 'conduct must be extreme to amount to a change in the terms and conditions of employment.'" *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Faragher*, 524 U.S. at 788). By adhering to these standards, a court "ensure[s] that Title VII does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace[.]" *Faragher*, 524 U.S. at 788 (citations and internal quotation marks omitted).

Dr. Rosenson argues that she was subject to a retaliatory hostile work environment that was so pervasive that it altered the conditions of her employment. *See* Am. Compl. ¶¶ 96–100. The Amended Complaint details several incidents that allegedly contributed to a hostile work environment, including (1) her placement on performance feedback plans, (2) repeated criticisms of her work, (3) interference with her job responsibilities, (4) changes to her reporting structure, and (5) ultimately, her termination. *See id.* ¶ 97. But these are merely a series of ordinary "work-related actions by supervisors," which "courts typically do not find . . . to be sufficient for a hostile work environment claim." *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012); *see, e.g.*, *Crews v. Carson*, No. 19-cv-3538, 2020 WL 12948520, at *5–7 (D.D.C. Oct. 16, 2020) (low performance reviews, unfair scrutiny, interference with management of subordinates, a letter of reprimand and disciplinary proceedings were insufficient to establish a hostile work environment); *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 138 (D.D.C. 2016) (finding no hostile work environment for claims of an undesirable office move, reprimand, leave restriction, and ultimately suspensions); *Davila v. Mayorkas*, No. 22-cv-357, 2023 WL 2072455, at *9 (D.D.C. Feb. 17, 2023) (collecting other cases). They do not amount to a pattern of behavior that is sufficiently severe or pervasive to support a hostile work environment claim.

*First*, Dr. Rosenson alleges that Ms. Foster placed her on two performance feedback plans. Am. Compl. ¶¶ 51, 75. While performance plans are understandably unwelcome, they are often par for the course in a typical workplace and thus insufficient to establish a hostile work environment. *See, e.g.*, *Sims v. Sunovion Pharms., Inc.*, No. 17-cv-2519, 2020 WL 6822696, at *22 (D.D.C. Nov. 20, 2020) ("Many of the challenged actions here—including [the] Plaintiff's performance review and placement on a [Performance Improvement Plan]—are the type of 'work-related actions by supervisors' that provide insufficient grounds for a hostile work environment claim." (quoting *Grosdidier v. Chairman, Broad. Bd. of Governors*, 774 F. Supp. 2d 76, 111 (D.D.C. 2011))); *Yuvienco v. Vilsack*, No. 23-cv-186, 2024 WL 4957481, at *5 (D.D.C. Dec. 3, 2024) (collecting cases)).

*Second*, Dr. Rosenson points to Ms. Foster's criticisms of her work. For example, she claims that Ms. Foster accused her of acting "inappropriate[ly]" in a meeting, noted "deficiencies" in her communications (like using the phrase "oh dear"), and complained about other "trivial or misplaced" mistakes. Am. Compl. ¶¶ 58, 66. But these kinds of "criticisms of [] work" and "other negative comments do not sufficiently demonstrate a significant level of offensiveness" to establish a hostile work environment claim. *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009); *see also Holmes-Martin v. Sebelius*, 693 F. Supp. 2d 141, 165 (D.D.C. 2010) (finding no hostile work environment claim as a matter of law based in part on allegations of "public criticism of [] job performance"). The same goes for the allegations about Dr. Rosenson being unfairly reprimanded for her "misdirected email," "her lack of "timeliness," and her "fail[ure]" to do "project management[.]" Am. Compl. ¶¶ 48, 78, 80; *see Nurriddin*, 674 F. Supp. 2d at 94 (explaining that "disparaging remarks" and "lowered performance evaluations" cannot "be characterized as sufficiently intimidating or offensive in an ordinary workplace context"); *Na'im*

*v. Rice*, 577 F. Supp. 2d 361, 377 (D.D.C. 2008) (same); *cf. Dieng v. Am. Insts. for Rsch. in Behav. Scis.*, 412 F. Supp. 3d 1, 15 (dismissing hostile work environment claims because "petty insults, vindictive behavior, and angry recriminations are not actionable under Title VII" (cleaned up)).

*Third*, Dr. Rosenson alleges that Ms. Foster interfered with her job responsibilities and did not provide feedback or guidance. For example, she had to wait ("sometimes up to two months") for Ms. Foster's "approval" before sending emails, Am. Compl. ¶ 54, and she received no "tangible feedback" to improve her communication, *id.* ¶ 83. Ms. Foster also ordered her to "cease" all communication with external actors without approval. *Id.* ¶¶ 55, 57. Again, while understandably frustrating, these are typical employment grievances that do not establish a hostile work environment claim. *See Nurriddin*, 674 F. Supp. 2d at 94 ("[T]he removal of important assignments . . . and close scrutiny of assignments by management [cannot] be characterized as sufficiently intimidating or offensive in an ordinary workplace context."); *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 7–8 (D.D.C. 2019) (dismissing hostile work environment claims involving the loss of desirable job responsibilities).

*Fourth*, Dr. Rosenson broadly references changes to her "reporting structure" and the "eliminat[ion]" and "alter[ation]" of her job duties. Am. Compl. ¶ 97. These, too, are ordinary workplace travails and insufficiently severe or offensive to support a hostile work environment. *See Blue v. Jackson*, 860 F. Supp. 2d 67, 76 (D.D.C. 2012) (finding no hostile work environment where the plaintiff alleged "diminished responsibilities," "being demoted to a lesser title," and suffering a "reduction of salary").

*Finally*, Dr. Rosenson points to her termination in October 2022 as the culmination of her workplace discrimination and harassment. Am. Compl. ¶ 13. But her termination, on its own, does not establish a hostile work environment. *See Aldrich*, 197 F. Supp. 3d at 138 ("[T]he fact that the

group [of allegations] includes one of the alleged discrete acts of discrimination—*i.e.*, the [suspension]—does not perforce establish a hostile environment."); *see also Nuriddin*, 674 F. Supp. 2d at 94 ("[M]ere reference to alleged disparate acts of discrimination . . . cannot be transformed, without more, into a hostile work environment." (cleaned up)). In this sense, Dr. Rosenson cannot bootstrap her retaliation claim into a hostile work environment claim. And even combining Dr. Rosenson's termination with the litany of workplace incidents discussed above, they fall far short of anything that could be seen as "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris,* 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (internal brackets and quotation marks omitted).

Dr. Rosenson cites several cases to support her claim. Pl.'s Opp'n at 16–18. But these cases all involve plaintiffs who experienced severe intimidation, ridicule, or insult by their employers. *See id.* (citing cases involving excessive ridicule, verbal assault, falsehoods about the plaintiff's violent character, and threatening emails). Dr. Rosenson's allegations pale in comparison. Beyond alleging difficult working conditions, Dr. Rosenson has not made a sufficient showing that the Museum severely or pervasively altered her employment or created an abusive working environment. Her allegations of typical workplace strife do not amount to a pervasive pattern of abuse, which is fatal to her claim.

Dr. Rosenson also underscores the concentrated nature of the alleged harassment, claiming it was "continuous" over a "short[]" eight months. Pl.'s Opp'n at 14–15. It is true that courts must consider the "frequency of [retaliatory] conduct" in determining whether a hostile work environment exists. *Baloch*, 550 F.3d at 1201 (citing *Faragher*, 524 U.S. at 787–88). But critically, that "conduct must be extreme to amount to a change in the terms and conditions of employment."

*George*, 407 F.3d at 416 (quoting *Faragher*, 524 U.S. at 788). The incidents in this case are nothing more than ordinary workplace tribulations. And courts have routinely declined to find a hostile work environment where there are "casual or isolated manifestations of a discriminatory environment . . . [that] are not sufficiently severe or pervasive," *Teran-Sanchez v. Stream Realty Partners, L.P.*, No. 23-cv-3189, 2024 WL 4215673, at \*2 (D.D.C. Sept. 17, 2024), regardless of the short timeframe. *See, e.g.*, *Clinton v. Brouillette*, No. 19-cv-1674, 2020 WL 4784688, at \*4–5 (D.D.C. Aug. 18, 2020) (hostile work environment failed as a matter of law where it turned on events which all occurred within "a few months"), *aff'd*, No. 20-5290, 2021 WL 1111330 (D.C. Cir. Mar. 19, 2021); *George*, 407 F.3d at 407, 416–17 (same for a six-month period).

### B.    Liquidated and Punitive Damages

The Defendant argues that liquidated and punitive damages are unavailable under Title VII. *See* Def.'s Partial Mot. Dismiss at 12–14. Dr. Rosenson "is not opposing" this argument, Pl.'s Opp'n at 20, which is the end of the matter. *Cf., e.g.*, *Doe v. Bank of Am. Corp.*, 273 F. Supp. 3d 203, 206 (D.D.C. 2017) (dismissing allegations because the "[p]laintiffs agree to dismiss all allegations against [certain defendants]").

### CONCLUSION

For these reasons, the Court grants the Defendant's Partial Motion to Dismiss, ECF No. 7. A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:    March 31, 2025